UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARK E. KENDRICK,

      Plaintiff,

vs.

JEFF CAPPA Sheriff,
BROTZ Captain,

      Defendants.

No. 1:17-cv-03423-SEB-MJD

**Entry Granting Defendants' Motion for Summary Judgment on Exhaustion,
Discussing Other Pending Motions,
and Directing Entry of Final Judgment**

### I. Background

Plaintiff Mark E. Kendrick is currently confined in an Ohio state prison. At all relevant times, he was a prisoner incarcerated at the Wayne County Jail (the "Jail"). This action was severed from another civil rights action filed in this District.

In his complaint, Mr. Kendrick alleges that defendants Sheriff Jeff Cappa and Captain Brotz were deliberately indifferent to unsanitary conditions at the Jail. Specifically, the toilets overflowed, leaving sewage on the floors and causing overwhelming odors. He alleges that these conditions made him ill.

The defendants moved for summary judgment seeking resolution of the claims against them on the basis that Mr. Kendrick failed to exhaust his available administrative remedies. Mr. Kendrick has opposed the motion for summary judgment and the defendants replied. The motion is ripe for ruling.

For the reasons explained in this Entry, the defendants' motion for summary judgment, dkt. [23], must be **granted.**

## II. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)

(footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

The burden of proof is on the defendants to demonstrate that Mr. Kendrick failed to exhaust all available administrative remedies before he filed this suit. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (quoting *Booth v. Churner,* 532 U.S. 731, 737-38 (2001)). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### III. Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Kendrick as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

Defendant Captain Andrew Abney-Brotz is employed at the Wayne County Sheriff's Department and is the Jail Commander. He is familiar with the operation, administration, and management of the Jail. Dkt. 23-1 at ¶ 2. All inmates have the right to file grievances regarding treatment or conditions in the Jail. *Id.* at ¶ 5. The Jail Grievance Procedure provides inmates with an internal grievance process for resolving complaints arising from institutional matters and conditions, to afford staff the opportunity to improve jail operations, and to reduce the number of lawsuits. *Id.* at ¶ 6.

The Jail Grievance Procedure is an 8-page document. Dkt. 23-2. It covers a variety of inmate complaints, including but not limited to living conditions, unprofessional behavior or actions or omissions of Jail personnel, and actions of other inmates. Dkt. 23-2 at III, B. Beginning September 30, 2015, an electronic Keefe Kiosk System was put in place for the submission of inmate grievances. Dkt. 23-4. An inmate utilizing his unique PIN may access the Keefe Kiosk System to file a formal grievance and receive responses to the grievance and appeal. Dkt. 23-1, ¶ 9. The Kiosks were used to ensure faster processing of grievances. Dkt. 23-4.

At all relevant times, the first step of the grievance process was that the inmate would attempt to resolve the complaint informally by contacting the appropriate staff member. Dkt. 23-1, ¶ 12; dkt. 23-2 at III, H. If the informal complaint was not resolved in a manner that satisfied the inmate, he could pursue the issue by filing a formal grievance within seven (7) days of the event. Dkt. 23-1, ¶ 13; dkt. 23-2 at III, I. If the formal grievance was not resolved in a manner that satisfied the inmate, he could pursue the issue through an appeal to the shift supervisor within seven (7) days of receiving a response to the formal grievance. Dkt. 23-1, ¶ 14; dkt. 23-2 at III, J. If the inmate was not satisfied with the response to the first appeal, he could pursue the appeal to the Jail Commander or his designee within seven (7) days of receiving a response to

the first appeal. *Id.* If the Jail Commander responded to the first appeal, the decision was deemed final. Dkt. 23-1, ¶ 14.

Although the defendants assert that the Grievance Procedure was available through the use of the Kiosk System, the 8-page Grievance Procedure was not posted on the Kiosk. The single page of information posted on the Kiosk did not inform inmates as to any appeal process. Dkt. 23-2; dkt. 23-3; dkt. 26-1; dkt. 29, n. 1. The page of information posted on the Kiosk included the directions that:

> An inmate may submit a grievance concerning a matter he/she feels is unjust or not in keeping with jail standards. The statement must be factual, filed within seven days of the incident, and must be signed by the inmate.

Dkt. 23-3; dkt. 26-3.

Mr. Kendrick arrived at the Jail in May 2017. He was under the impression that after submitting a grievance, there was no appeal process. Dkt. 26-1, at 3. He did acknowledge, however, that "[e]ven though I had never seen Defendants [sic] General Order Grievance Procedure, I inadverdently [sic] followed them anyway" by submitting appeals to Captain Brotz. Dkt. 26-1, ¶¶ 8, 9.

The type and nature of the allegations alleged in the lawsuit, relating to unsanitary conditions in the Jail due to overflowing toilets, fall within the types of complaints that are grievable under the Jail Grievance Procedure.

Mr. Kendrick accessed the Keefe Kiosk System and submitted a formal grievance several times prior to the end of June 2017. Dkt. 23-5 at 6 (June 12, 2017, grievance relating to outgoing mail); at 7 (June 13, 2017, grievance relating to his detainer); at 8 (June 20, 2017, grievance relating to the heat in his cell at night). He also filed a grievance on July 16, 2017, asking for medical follow up for his knee. Dkt. 23-5 at 9.

Mr. Kendrick alleges that the toilets backed up raw sewage and were shut off in the Jail "from the end of June 'til the 6th of July," when a plumbing company came to fix the issue. Dkt. 2 at 3. He further alleges that "[e]ven after we got through that the toilets continued to flood, left in our cells to eat with poo floating on our floors." Dkt. 2-3.

Mr. Kendrick did not have access to the Kiosk System from June 26, 2017, through June 28 or 29, 2017, while he was held in a padded suicide cell. Dkt. 26-1 at 2. From approximately July 1, 2017, through July 10, 2017, Mr. Kendrick's housing unit was under construction to fix the plumbing problems that caused the toilet backups. Dkt. 26-1 at 3. During this time, the inmates were on lockdown and were not able to access the Kiosk System. *Id.* This lawsuit was filed on August 30, 2017, with the complaint having been signed on August 27, 2017. Dkt. 2.

On October 27, 2017, Mr. Kendrick filed a grievance indicating that on some unidentified dates he had been left in his cell with sewage and was forced to eat in his cell under those conditions. Dkt. 23-5 at 25. Believing that Mr. Kendrick was referring to the allegations brought in this action, Captain Brotz responded by indicating that the matter was in litigation. *Id.*

## IV. Analysis

The facts viewed in the light most favorable to Mr. Kendrick reflect that he was not properly informed about the complete grievance process. The information the defendants admit to making available to Mr. Kendrick included only the first step of the grievance process. Mr. Kendrick was aware, however, that a grievance had to be filed within seven (7) days of the incident complained about.

The challenged conditions occurred over a period of time lasting from June 26, 2017, through at least July 6, 2017, if not longer. The Court accepts, for purposes of this motion, Mr. Kendrick's assertion that construction was going on in the Jail through approximately July 10,

2017, which blocked access to the Kiosk System. Assuming that the conditions were improved at the earliest by July 6, 2017, and the construction was complete at the latest by July 10, 2017, Mr. Kendrick would have had time to timely file a grievance using the Kiosk System. Mr. Kendrick, however, did not file a grievance until October 27, 2017, complaining about the days he was forced to eat in his cell with sewage water in his cell. Dkt. 23-5 at 25. This grievance was filed *after* this lawsuit was filed on August 30, 2017. Dkt. 2.

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). "An inmate must comply with the administrative grievance process that the [Jail] establishes…" *Id.*; *see also Ross v. Blake,* 136 S. Ct. at 1856 (the mandatory language of the PLRA "means a court may not excuse a failure to exhaust…"). The PLRA requires that the applicable grievance process be completed *before* a civil lawsuit is filed. 42 U.S.C.A. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

Here, it is undisputed that Mr. Kendrick had access to the Kiosk System before the seven (7) day grievance deadline expired, but he did not timely initiate the grievance process. Moreover, he did not file a grievance relating to the claims alleged in this case until after he filed this lawsuit. Therefore, he did not comply with the exhaustion requirements imposed by the PLRA.

The Court is aware that in another one of Mr. Kendrick's cases, the defendants' motion for summary judgment on the issue of exhaustion was denied because there was a genuine issue of material fact relating to the availability of the Kiosk System. *See Kendrick v. Limburg,* 1:17-cv-3000-JMS-DML (dkt. 58). In that case, the incident at issue occurred on a single day, June

26, 2017. The disputed issue of fact was whether Mr. Kendrick had access to the Kiosk System between June 26, 2017, and seven (7) days later, July 3, 2017. Facts that have been accepted as true in this case for purposes of the summary judgment motion do not have to be accepted as true in a different case based on different evidence. Moreover, access to the Kiosk System during that week would not be a dispositive finding in this case. As discussed above, the conditions at issue in this case lasted at least through July 6, 2017, and there is no dispute that the Kiosk System was available thereafter for several days of the seven (7) day filing period during which no impediment to using the process has been alleged.

## V. Other Pending Motions and Conclusion

Mr. Kendrick's motion to submit affidavit, filed on June 25, 2018, dkt. [63], is **denied as untimely and unnecessary.** The tendered affidavit from another inmate supports Mr. Kendrick's own affidavit testimony that on or about June 28, 2017, human waste was on the floor for hours and that the inmates were forced to eat near it. The inmate also states that the Kiosk was not available from July 1, 2017, through July 8, 2017, and the toilets overflowed again on July 8, 2017. Dkt. 63-1. The Court has already accepted as true, for purposes of this motion, Mr. Kendrick's similar statements. Accepting this other inmate's statement, Mr. Kendrick would have had even more time to file a grievance, beginning on July 8, 2017.

Mr. Kendrick's motion to amend complaint, filed on July 13, 2018, dkt. [66], is **denied as untimely and futile.** In the proposed amended complaint, Mr. Kendrick adds more specificity to his factual allegations and seeks to add several defendants (most of them unnamed "John and Jane Doe" defendants) who brought him trays of food, expecting him to eat while his cell was flooded with waste. The exhaustion defense would still bar these claims, and therefore, it would be futile to amend the complaint at this stage in the litigation.

There is no genuine material question of fact as to whether Mr. Kendrick timely initiated the exhaustion process before filing his claims in this action. For the reasons discussed above, the defendants' motion for summary judgment, dkt. [23], is **granted.**

The consequence of Mr. Kendrick's failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that this action must be **dismissed without prejudice**. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

Final judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/25/2018

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MARK E. KENDRICK
505231
Mansfield Correctional Facility
P. O. Box 788
Mansfield, OH 44901

Electronically registered counsel